THE NEW YORK & PORTO RICO STEAMSHIP COMPANY, DEMANDANTE Y APELADA, *v.* PORTO RICO FRUIT UNION, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre cobro de dinero.

No. 2488.—Resuelto en abril 3, 1922.

TRANSPORTE MARÍTIMO—PAGO DEL FLETE—*Freight Collect.*—El dueño de un buque tiene derecho a cobrar del embarcador el importe del flete de mercaderías aun cuando éstas hubieran sido aceptadas por la compañía naviera bajo condición de *"freight collect"* o sea para ser cobrado el flete al consignatario al ser entregadas las mercaderías.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. O. M. Wood, Soto Gras & Siaca.*

Abogado de la apelada: *Sr. J. Sifre, Jr.*

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

En enero de 1920 se embarcaron en el vapor *Coamo* de la corporación demandante, en el puerto de San Juan, P. R.,

con destino al de Nueva York, N. Y., dos partidas de cajas de toronjas, una de 2496 y otra de 40.

En los conocimientos figuraba como embarcadora la corporación demandada y como consignatarios P. Ruhlman & Co., de Nueva York, N. Y., y en ellos se consignaron las palabras *"Freight Collect,"* que quieren decir que el importe del flete debía cobrarse en el punto de su destino.

Las toronjas se entregaron a los consignatarios y la corporación demandante trató de cobrar de ellos el valor del flete ascendente a $1,268 sin conseguirlo por haberse declarado en quiebra dichos consignatarios. Entonces la demandante solicitó de la demandada el pago y habiéndose negado, estableció la presente acción en la que obtuvo una sentencia favorable.

La demandada apeló de esa sentencia, alegando la comisión de dos errores, a saber:

1. El cometido al declararse que la demandada era responsable no obstante haber sido aceptado el embarque por cuenta de P. Ruhlman & Co., de acuerdo con la carta de garantía dada por dicha firma, y

2. El cometido al declararse a la demandada responsable no obstante haberse demostrado que actuó como un mero agente expedidor (*forwarding agent*) por cuenta de The Isabela Grove Company y la Sucesión Winthrop, dueñas de las toronjas.

Examinemos el primer error. Se presentó como prueba una carta escrita en inglés que dice así:

"Freight guarantee, New York, Oct. 20, 1919.—The New York & Porto Rico Steamship Co., 11 Broadway, New York City.—Gentlemen:—We request that you instruct your agents to accept shipments of fruits from the following shippers consigned to us direct, freight payable at New York, and we hereby agree to pay all freight and charges on such shipments made during the season of 1919–1920 to ———, whether delivered in whole or in part, sound or unsound. —Yours truly, P. Ruhlman & Co.—Signature. Ports of Shipment.

All Porto Rican Ports.—Names of Shippers, All Shippers consigning us.''

La demandante acepta que de acuerdo con la carta que antecede y con los propios conocimientos, ella podía cobrar los fletes, como intentó hacerlo, de los consignatarios, pero sostiene que de acuerdo con los términos del contrato celebrado y con la jurisprudencia también podía cobrar dichos fletes de la demandada, y tiene razón, a nuestro juicio.

En una de las muchas cláusulas impresas de los conocimientos se consigna que el embarcador y el consignatario son mancomunada y solidariamente responsables del pago del flete, pero prescindiendo de esta cláusula impresa y tomando sólo en consideración las palabras especialmente consignadas en el contrato, *freight collect,* y la carta de garantía, aún así estimamos que el derecho del dueño del buque a cobrar el flete del embarcador, es claro.

Muchos casos han sido citados en los alegatos. Nos referiremos al de *Wooster* v. *Tarr,* reportado en el tomo 85, página 707 de las *American Decisions,* que trata con amplitud y seguridad la cuestión. Procede de Massachusetts y la opinión está escrita por el *Chief Justice* Bigelow. Dice así:

''La cuestión levantada en este caso es muy extensamente discutida en el de *Blanchard* v. *Page* 8 Gray, 281, 286, 290–295. Allí se dijo que es la doctrina establecida que un conocimiento es un simple contrato escrito entre un embarcador de artículos y el dueño del barco; conviniendo el último en transportar los artículos, y el primero en pagar la compensación estipulada cuando el servicio sea prestado. Sobre la corrección de esta manifestación no puede haber duda alguna. El embarcador o consignador, ya sea o no el dueño de los artículos embarcados, es la parte con quien el dueño o capitán lleva a cabo el contrato de flete. Es aquél quien hace el depósito de los artículos que van a ser transportados, y, como depositante, es responsable por la compensación que ha de pagarse por el transporte. El *dictum* del Juez Bayley en el caso de *Moorsom* v. *Kymer,* 2 *Maule & S.* 318, posteriormente repetido por Lord Tenterden en el de *Drew* v. *Bird, Moody & M.* 156, de que en ausencia de un con-

trato expreso por el embarcador de pagar el flete, cuando de acuerdo con el conocimiento los artículos han de ser entregados previo pago del flete por el consignatario, no puede reclamarse al embarcador el precio del transporte, ha sido claramente repudiado y no puede ser considerado como una expresión correcta de la ley; *Sanders* v. *Van Zeller,* 4 *Q. B.* 260, 284; *Maclachlan on Shipping,* 426.

"Se sostiene por parte de los demandados que la omisión del capitán de cobrar el flete a los consignatarios de la carga o a sus cesionarios, bajo las circunstancias expresadas, fué un quebrantamiento de la buena fe hacia los embarcadores, que produce el efecto de un impedimento contra él y los demás dueños del buque, cuyo agente era, para reclamar el importe del flete a los demandados. Pero no hay hechos en qué fundar una alegación de mala fe contra el capitán. El no actuó contrariamente a su contrato ni consistentemente con su deber hacia los embarcadores. Es cierto que él dejó de hacer efectivo su gravamen sobre la carga en garantía del flete, al entregarla sin insistir en el pago del mismo por los consignatarios. Esto no fué violación alguna de ninguna obligación que él hubiera asumido hacia los demandados como embarcadores de la carga. Un capitán no está obligado a su perjuicio a obligar a los consignatarios al pago del flete. La cláusula usual en los conocimientos al efecto de que la carga ha de ser entregada a la persona designada, o sus cesionarios, 'pagando él o ellos el flete,' es insertada solamente como un reconocimiento o aserción del derecho del capitán de retener los artículos transportados hasta que su gravamen es satisfecho mediante pago del flete, pero ella no impone obligación alguna sobre él de insistir en el pago antes de entregar la carga. Si él cree conveniente renunciar a su derecho de gravamen y entregar los artículos sin que medie pago del flete, su derecho subsiste de recurrir al embarcador en demanda de la compensación: *Shepard* v. *De Bernales,* 13 East, 565; *Domett* v. *Beckford,* 5 Barn & Adol. 521, 525; *Christy* v. *Row,* 1 *Taunt,* 300." *Wooster* v. *Tarr,* 85 Am. Dec. 708–709.

El segundo error tampoco se ha cometido, a nuestro juicio. Es cierto que se demostró que la demandada no era la dueña de las toronjas transportadas, pero fué con la demandada con quien contrató directamente la demandante, sin expresarse en el contrato que la demandada actuaba como agente y en nombre de otras personas, según aparece de los conocimientos.

Se alegó por la demandada que la demandante sabía que ella no era la dueña de las frutas y que simplemente actuaba como un agente expedidor (*forwarding agent*), pero al presentarse la prueba, el propio *manager* de la corporación demandada, S. A. Davidson, declaró:

"A. La Compañía de vapores tiene o tenía en aquella fecha conocimiento de la relación en que actuaba la demandada en este caso, Porto Rico Fruit Union?—T. Sí, señor.

"A. Las cajas en que vienen estas frutas tienen alguna seña en su exterior que denote a quién pertenecen?—T. Sí, señor.

"(Dte.) A. Cuando esa fruta iba a embarcarse quién se encargó de arreglar todos los detalles del embarque, la Porto Rico Fruit Union?—T. Sí, señor.

"A. ¿Fué la que firmó el conocimiento? ¿Quién aparece en el conocimiento como consignatario, la Porto Rico Fruit Union?—T. La Porto Rico Fruit Union.

"A. Luego entonces quién contrató con la New York & Porto Rico Steamship Company, la Porto Rico Fruit Union?—T. La Isabela Grove por medio de su agente la Porto Rico Fruit Union.

"A. Testigo, cuando ustedes hicieron el contrato, según usted actuando como agente, se hizo saber a la New-York & Porto Rico Steamship Company que actuaba como tal agente de la Isabela Grove? —T. Hasta en ese momento no.

"A. De modo que cuando ese contrato se hizo en ese momento usted no informó a la New York que estaba actuando como agente de la Isabela Grove?—T. En ese momento no."

Se ve, pues, que cualquiera que hubiera sido la fuerza que hubiera podido tener la alegación de la demandada, siempre resultaría que no se presentó la prueba satisfactoria necesaria.

Por virtud de todo lo expuesto, debe confirmarse la sentencia recurrida.

> *Sin lugar el recurso y confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.